

**275 MADISON AVENUE, 26TH FLOOR**
**NEW YORK, NEW YORK 10016**
**T** 212.297.0700 **F** 212.297.0730
info@riemerhess.com | www.riemerhess.com

November 6, 2023

Honorable Jennifer L. Rochon
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

Defendant shall submit a letter, not exceeding three pages, responding to this letter no later than **November 9, 2023**.

**SO ORDERED.**

Dated: November 7, 2023.
New York, New York

*Jennifer Rochon*
**JENNIFER L. ROCHON**
**United States District Judge**

Re:   *Jason Rappaport v. Guardian Life Insurance Company of America*, 1:22-cv-8100-JLR
   **LETTER MOTION TO COMPEL ADDITIONAL DISCOVERY**
   **REDACTED**

Judge Rochon,

Pursuant to the Court's Individual Rules and Local Rule 37.2, Plaintiff Jason Rappaport advises the Court of a discovery dispute involving Guardian's internal procedure titled "Code Long Term Disability Benefits" (the "Procedure")(Exhibit A). The Parties conferred in good faith via email and over the telephone regarding this dispute but were unable to reach a resolution by today, which is the close of discovery. Guardian would not consent to an extension of discovery. Rappaport requests that his motion be heard at the court conference presently scheduled for November 28, 2023.

Rappaport requests that Guardian be compelled to produce all documents responsive to Requests 1, 2 and 3 of Plaintiff's Request for Supplemental Disclosure, dated October 2, 2023 (See Exhibit A), as follows: (1) the Procedure in its native format, including all meta data and other electronic data; (2) all prior versions of the Procedure back to the date it was first created; and (3) all predecessor articles, procedures, or guidelines within the IMS system (or otherwise) that served the same purpose of the Procedure on and after January 1, 2005.

This discovery pertaining to the Procedure is proportionate and not overburdensome because it is both focused and central to Rappaport's long term disability claim subject to ERISA. Rappaport suffers from a debilitating form of leukemia. Guardian terminated his residual disability benefits, asserting he earned more than 80% of his "insured earnings." The only issue in the case is whether the definition of "insured earnings" in Guardian's Policy includes K-1 earnings. If it includes K-1 earnings, as a matter of mathematics, Rappaport did not earn more than 80% of "insured earnings," making Guardian's termination of benefits incorrect and improper.

The Procedure on its face definitively resolves this question. In a section titled, "Earnings Definition," the Procedure provides in pertinent part (Ex. A, p. 5):

Guardian asserts that the Procedure is inapplicable because it allegedly took effect at some time after Guardian's Policy was issued to Rappaport's employer in 2005. Guardian's defense, however, has no documentary foundation, and the Procedure has no stated effective date. Certainly, if the Procedure represented a significant change in the definition of "insured earnings" in all of

Guardian's disability policies, and a demarcation from the past, there would be some written evidence of the shift.  But, Guardian has proffered none.

To flush out whether the Procedure applied to Mr. Rappaport, Rappaport requested and the Court granted Rappaport the opportunity to take one or more 30(b)(6) depositions.

On September 29, 2023, Rappaport took the deposition of Guardian employee Dewey Lee Yeatts.  (See Exhibit C).  Mr. Yeatts was designated as its 30(b)(6) witness, with regard to:

- Guardian's procedures for determining the appropriate "Earnings Definition for an LTD Plan," and
- Guardian's procedures for determining whether K-1 earnings are included in the "Earnings Definition" of an LTD Plan.

Despite these designations, Mr. Yeatts could not answer even basic questions, including: when the procedure first took effect; and most importantly, he could not explain the disturbing fact that Guardian produced a version of the Procedure that had been <u>updated</u> on the very day it was printed out for production to Rappaport – May 16, 2023 (Ex. A, p. 1).

> Q.    Do you know why it was updated on the day that was presumably printed?
>        Objection
> A.    I would have no idea.  I did not update this page.  (pg. 55)
> …
> Q.    Do you know who authorized the update of this article?
> A.    I did not update it, so I would have no direct knowledge. (pg. 56)
> . . .
> Q.    And you have no knowledge of why it was updated the day it was printed out, do you?
> A.    I would have no knowledge--
>        Objection
>        of such.  (pgs 77-78).
> . . .
> Q.    Can you tell from looking at this document the date the document was first written?
> A.    No, I cannot. (pg. 58).
> Q.    Is there any way to tell through the IMS system when an article was first written?
> A.    I assume so, but I have no direct knowledge.  (pgs. 58-59).

Because the 30(b)(6) deposition did not answer these pertinent questions, Rappaport was forced to serve his Supplemental Request on October 2, 2023 (Exhibit B).  On November 1, 2023, Guardian served its response. (See Exhibit D).  Guardian's response is inadequate.  The Court should order Guardian to produce all documents responsive to each request.

**Request No. 1 – Production of the Procedure in Native Format**

Guardian has refused to provide Rappaport a copy of the Procedure in native format. (Ex. D, p. 4).

Production of the Procedure in native format would uncover all prior versions of the Procedure because the Procedure is maintained on Microsoft Sharepoint. Sharepoint can readily be searched to find prior versions of a document. See Microsoft Website.

**Request No. 2 – Production of Prior Versions of the Procedure**

Guardian has produced several prior versions of the Procedure dating after 2021, indicating that's all it will or could produce. (Exhibit D, p. 4). But, Guardian's IMS system did not come into being in 2021. In fact, in this case alone, Guardian has produced procedures maintained on Sharepoint as early as 2017. So even if, arguendo, the IMS system originated in 2017 (and Guardian is not even suggesting that is when it began), production on and after 2021 would be incomplete.

**Request No. 3 – Production of Predecessor Procedures**

Guardian refuses to confirm whether or not predecessor procedures are available. (Exhibit D, pp. 4-5). But, even if the Procedure came into being after 2005, it does not mean that K-1 earnings were treated differently before 2005. A predecessor procedure would need to be consulted. Certainly, if the Procedure represented a sea change in how Guardian defined "insured earnings" in all of its policies there would be paperwork describing that change. No such paperwork has been disclosed.

Respectfully submitted,

Scott M. Riemer, Esq. (SR5005)

Riemer Hess, LLC
*Attorneys for Jason Rappaport*

cc: VIA ECF
Brooks McGratten, Esq.
Mark Rosen, Esq.