UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JASON RAPPAPORT,

                              Plaintiff,

              -against-

GUARDIAN LIFE INSURANCE COMPANY OF
AMERICA,

                              Defendant.

Case No. 1:22-cv-08100 (JLR)

**OPINION AND ORDER**

JENNIFER L. ROCHON, United States District Judge:

Jason Rappaport ("Plaintiff" or "Rappaport") brings this case against Defendant

Guardian Life Insurance Company of America ("Defendant" or "Guardian"), alleging claims

under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et

seq.*, related to his employee benefit plan sponsored and maintained by his employer. The

parties have filed cross-motions for partial summary judgment. For the reasons stated below,

Defendant's motion for partial summary judgment is DENIED. Plaintiff's motion for partial

summary judgment is GRANTED in part and DENIED in part. Defendant is also DENIED

leave to amend its counterclaims.

## BACKGROUND

The Court draws the following facts from the parties' submissions in support of their

respective motions for summary judgment, including their Joint Statement of Undisputed

Facts, Dkt. 78-2 ("JSUF"); the administrative record submitted attached to the affidavits of

Ryan McIntyre and Eden Guri, Dkts. 79, 80 ("Guri Decl."), 86 (together, "App'x");[1]

Rappaport's affidavit, Dkt. 89-1 ("Rappaport Aff."); the parties' Rule 56.1 statements, Dkts.

_____

[1] The Court refers to the page numbers of the administrative record that are reflected by the
bates numbers beginning with the prefix 'RAPP.'

77 ("Pl. SUF"), 78-1 ("Df. SUF"); Rappaport's response to Guardian's Local Rule 56.1

Statement, Dkt. 82 ("Pl. RSUF"); Guardian's responses to Rappaport's Local Rule 56.1

Statement and additional material facts, Dkt. 86 ("Df. RSUF"); and Rappaport's counter-

response to Guardian's additional material facts, Dkt. 92 ("Pl. SRSUF").  The facts are

undisputed unless otherwise noted.

## I.    Factual Background

In 1994, Rappaport, along with his business partner, formed Industrial Credit of

Canada d/b/a ICC Mortgage Services ("ICC").  JSUF ¶ 1.  Rappaport owned fifty percent of

the company and served as its secretary and treasurer.  *Id.* ¶¶ 2, 4.  ICC, through its insurance

broker Jay Greenbaum ("Greenbaum"), applied for group disability insurance coverage from

Guardian in 2004 or 2005.  *Id.* ¶¶ 5, 6.  ICC obtained a policy from Guardian that funded

long-term disability ("LTD") benefits and covered two classes of employees: (1) owners and

business managers and (2) all other employees.  *Id.* ¶¶ 7, 10.  Guardian is the Claim

Administrator under the plan.  *Id.* ¶ 8.

In its plan application, ICC selected an earnings definition of "[s]tandard definition

*including* bonuses and commissions."  JSUF ¶ 13 (emphasis added).  On March 8, 2005,

Guardian Processing Underwriter Specialist Anna Keiper asked Greenbaum to confirm

various details of ICC's application, including the LTD earnings definition.  *Id.* ¶ 14; App'x

5595.  Specifically, she stated "master app has including bonus and comm and quote has

excluding bonus and comm."  App'x 5595.  Greenbaum emailed her back the same day,

confirming that ICC requested an earnings definition that would include bonuses and

commissions.  JSUF ¶¶ 14, 15.  Guardian's internal new case worksheet reflected that

selection, as did a schedule of benefits in the administrative record that included an earnings

definition corrected by hand to change "excluding" to "including" bonuses and commissions. *Id.* ¶¶ 16-17, 22; App'x 5583, 5611.

Notwithstanding the foregoing, the final schedule of benefits included an earnings definition that *excluded* bonuses and commissions. App'x 5599. Guardian ultimately issued the LTD policy, effective March 1, 2005, with an insured earnings definition that excluded bonuses and commissions. JSUF ¶¶ 19, 23; App'x 86, 5785. The policy's insured earnings definition read in part:

> *Insured earnings* includes your contributions deposited into a cash or deferred compensation plan, or salary reduction plan, qualified under IRC Section 401(k), 403(b) or 457. Earnings based on excluded income and *employer* contributions deposited into such 401(k), 403(b) or 457 plan are excluded.
>
> For all covered persons, *insured earnings* means your rate of monthly earnings, <u>excluding bonuses, commissions, expense accounts, and any other extra compensation,</u> as reported by the *plan sponsor*.

App'x 86 (underlining added for emphasis).

About ten years later, on August 17, 2015, Rappaport sought LTD benefits under the plan following his diagnosis with leukemia. JSUF ¶ 27; Df. RSUF ¶ 30. On September 15, 2015, Rappaport, through counsel, sent Guardian a letter enclosing proof of disability and other records, including an employer statement and payroll records from August and September 2015. JSUF ¶ 28. On September 21, 2016, Guardian sent Rappaport a letter informing him that it had determined benefits were payable and that his insured earnings had been calculated as $18,333.33 per month. *Id.* ¶¶ 29, 30. Subsequently, Guardian began paying Rappaport his LTD benefits and paid those benefits until August 2020. *Id.* ¶¶ 31, 32.

On August 11, 2020, Guardian informed Rappaport's counsel that his LTD benefits were being terminated because Guardian had not received the required ongoing proof of claim related to Rappaport's medical records. *Id.* ¶ 61. Rappaport sought to reopen his claim;

Guardian denied the request on August 13, 2020. *Id.* ¶ 63. After Rappaport submitted additional medical records and earning statements over the course of late 2020 and early 2021, Guardian informed him on January 22, 2021, that it had determined that he no longer qualified for LTD payments because he was "capable of earning more than the maximum allowed while disabled." *Id.* ¶ 72 (quoting App'x 2854).

## II.    Administrative Review

On January 29, 2021, Rappaport requested the documents relied upon by Guardian in denying his claim, pursuant to ERISA section 104(b) and 29 C.F.R. § 2560.503-1(h)(2)(iii). JSUF ¶ 73. Guardian supplied some of those documents on February 26, 2021. *Id.* ¶ 75. In April 2021, Rappaport's attorney requested materials related to the benefits determination predating August 2015, communications between Guardian and ICC, and information Guardian relied on in determining Rappaport's insured earnings. *Id.* ¶¶ 76, 77. Despite following up on several occasions, Rappaport's attorney did not receive a response until July 16, 2021, although he had to follow up on July 29, July 30, and August 12, 2021, reiterating his request for production of materials in Guardian's records that pre-date Rappaport's claim. *See id.* ¶¶ 78-85. Rappaport requested, and Guardian granted, several appeal deadline extensions through March 25, 2022. *Id.* ¶¶ 86-87. On March 25, 2022, Rappaport appealed Guardian's adverse benefit determination. *Id.* ¶ 88; *see* App'x 2724-39.

Under the regulations, Guardian had forty-five days to review Rappaport's appeal. JSUF ¶ 91. Guardian's Claims Management System contains an entry dated April 26, 2022, expressing an intent to refer the file for accountant review. Pl. SRSUF ¶ 173 ("Refer file to accountant as appeal argument has financial implications." (further capitalization omitted)); App'x 248. On May 6, 2022, Guardian wrote a letter to Rappaport that acknowledged that the forty-five-day review period would expire on May 9, 2022, and stated that it had determined

that additional financial review "in regard to the financial information" was necessary as part of its review.  JSUF ¶¶ 91-92 (quoting App'x 5545).  Guardian noted that "[i]f additional information is required as a result of this review," it would advise Rappaport.  *Id.* ¶ 92 (quoting App'x 5545).  In this letter, Guardian advised that it was "asserting [its] right to take an additional extension (at least 45 days if needed) to issue a determination on this matter," which would expire on June 23, 2022.  App'x 5545.

On May 20, 2022, Guardian contacted John Hoffman ("Hoffman"), the external financial reviewer for Rappaport's appeal, and provided him financial information and the policy.  Pl. SRSUF ¶ 174; App'x 4480; Dkt. 85 ¶ 9.  On June 7, 2022, Hoffman issued his report.  Pl. SRSUF ¶ 175.  On June 14, 2022, Guardian informed Rappaport about Hoffman's report and requested additional financial information from Rappaport.  *Id.*; App'x 4842.  On June 17, 2022, Guardian contacted Rappaport's counsel to request an additional forty-five-day extension to issue a decision on Rappaport's appeal.  JSUF ¶ 98.

The same day, Rappaport's counsel informed Guardian that he had requested the tax documents and would provide them to Guardian immediately on receipt.  App'x 4850.  On June 21, 2022, Rappaport's counsel sent Guardian the requested W-2s for 2016, 2017, 2018, and 2020, as well as tax records for ICC and Sierra Holdings.  *Id.* at 4865-66; JSUF ¶¶ 100-102.  He also informed Guardian that Rappaport objected to its request for an extension to complete its review.  JSUF ¶ 101.

On June 23, 2022, Guardian informed Rappaport in a letter that it had upheld its claim determination.  *Id.* ¶ 103.  The following day, Rappaport requested further documents from Guardian and, on July 1, 2022, Guardian sent more than sixty pages of documents related to the 2004-2005 policy negotiations and purchase of the LTD plan.  *Id.* ¶¶ 105-106.

### III.    Procedural History

On September 22, 2022, Rappaport filed this ERISA action against Guardian.  Dkt. 1

("Compl.").  He sought recovery of unpaid LTD benefits under section 502(a)(1)(B) of

ERISA, 29 U.S.C. § 1132(a)(1)(B); reformation of the plan so that "insured earnings" would

include bonuses and commissions under section 502(a)(3), *id.* § 1132(a)(3); and attorney's

fees and costs under section 502(g)(1), *id.* § 1132(g)(1).  Compl. at ¶¶ 15-18.  On December

23, 2022, Guardian moved to stay the case and to remand the claim for further administrative

proceedings, "in part so Guardian could complete its review of underwriting documentation."

JSUF ¶ 109; *see* Dkt. 15.  The Court granted Guardian's motion to remand the case to permit

the further review.  Dkt. 25.

After continued review, Guardian upheld its prior determination and held that the

earnings definition excluded bonuses and commissions.  JSUF ¶ 114.  On March 31, 2023,

Rappaport moved to reopen the case.  Dkt. 29.  On April 13, 2023, the Court granted

Rappaport's motion to reopen the case, Dkt 30, and Rappaport filed an Amended Complaint

the following day, Dkt. 31 ("AC").  Rappaport amended his complaint to include allegations

that Guardian had not reviewed the insured earnings formula on remand, AC ¶¶ 111-132, and

to provide more detail regarding his claim for reformation, *id.* ¶¶ 154-155, 164.

Following discovery, the parties cross-moved for partial summary judgment on

January 5, 2024.  Dkts. 74, 75, Dkt. 76 ("Rappaport Br."); Dkt. 81 ("Guardian Br.").  On

August 7, 2024, after the close of summary judgment briefing, *see* Dkts. 84 ("Guardian

Opp."), 87 ("Rappaport Opp."), 90 ("Rappaport Reply"), 91 ("Guardian Reply"), Guardian

moved for leave to file an amended answer to add an affirmative defense based on the

Supreme Court's recent decision in *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244

(2024), and moved for leave to file a supplemental brief on that issue.  Dkts. 94, 96.  The

Court granted the motions and permitted time for additional briefing.  Dkt. 98.  On August 8, 2024, Guardian filed its amended answer.  Dkt. 99 ("Am. Ans.").  On September 6, 2024, Guardian filed its supplemental briefing concerning *Loper Bright*, Dkt. 104 ("Df. Supp. Mem."); on September 30, 2024, Rappaport filed his reply, Dkt. 105 ("Pl. Supp. Reply").  On October 28, 2024, Rappaport submitted a letter notifying the Court of supplemental authority related to the *Loper Bright* issue.  Dkt. 106.  On October 30, 2024, Guardian submitted a letter responding to Rappaport's submission.  Dkt. 107.

## LEGAL STANDARDS

### I.    Summary Judgment Standard

Under Rule 56, a moving party is entitled to summary judgment if, on any claim or defense, that party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A fact is 'material' only if it 'might affect the outcome of the suit under the governing law.'  A dispute is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Rosen v. UBS Fin. Servs. Inc.*, No. 22-cv-03880 (JLR), 2023 WL 6386919, at *4 (S.D.N.Y. Sept. 29, 2023) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  "The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact."  *JTRE Manhattan Ave. LLC v. Capital One, N.A.*, No. 21-cv-05714 (JLR), 2024 WL 3227010, at *8 (S.D.N.Y. June 27, 2024).

In ruling on a motion for summary judgment, "the court must view all evidence in the light most favorable to the non-moving party, and resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought."  *Id.* (citation omitted) (internal quotation marks omitted).  To defeat a motion for summary judgment, the nonmoving party must advance more than "a scintilla of evidence,"

*Liberty Lobby*, 477 U.S. at 252, and demonstrate more than "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If, as here, the parties file cross-motions for summary judgment, "the court must evaluate each party's motions on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Ram Krishana, Inc. v. Mt. Hawley Ins. Co.*, No. 22-cv-03803 (JLR), 2024 WL 1657763, at *3 (S.D.N.Y. April 17, 2024) (quoting *Dish Network Corp. v. Ace Am. Ins. Co.*, 21 F.4th 207, 212 (2d Cir. 2021)).

## DISCUSSION

The Court considers the arguments in each party's motion for partial summary judgment in turn, "taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Ram Krishana*, 2024 WL 1657763, at *3 (citation omitted).

### I.    Guardian's Motion for Partial Summary Judgment

The Court first considers Guardian's motion for partial summary judgment. Guardian moves for summary judgment on Count II of Rappaport's Amended Complaint. Dkt. 74. In Count II, Rappaport alleges that he is entitled to reformation of the LTD Plan under Section 1132(a)(3), so that the policy's definition of "[i]nsured [e]arnings" shall include "bonuses and commissions." Am. Compl. ¶ 163. Rappaport then seeks disability benefits under the LTD Plan, as reformed, under Section 1132(a)(1)(B). *Id.* ¶ 164. Guardian raises three arguments in support of its motion for summary judgment on this claim, and the Court will address each in turn.

## A.    Statute of Limitations

Guardian first argues that the statute of limitations bars Rappaport's claim for reformation.  Guardian Br. at 13.  Guardian argues that the statute of limitations for Rappaport's reformation claim is six years, that it accrued as of the date the policy issued in 2005, and that his claim in 2022 is therefore time barred.  The Court does not agree.

### 1.    Legal Standard

The Second Circuit has explained that "[a]s ERISA does not prescribe a limitations period for actions under § 1132, the controlling limitations period is that specified in the most nearly analogous state limitations statute."  *Miles v. N.Y. State Teamsters Conf. Pension & Ret. Fund Emp. Pension Benefit Plan*, 698 F.2d 593, 598 (2d Cir. 1983); *accord Carollo v. Cement & Concrete Workers Dist. Council Pension Plan*, 964 F. Supp. 677, 688 (E.D.N.Y. 1997).  Under New York law, an action under a contract — including a claim for reformation — "must be commenced within six years."  *Hirt v. Equitable Ret. Plan for Emps.*, 450 F. Supp. 2d 331, 333 (S.D.N.Y. 2006), *aff'd*, 285 F. App'x 802 (2d Cir. 2008) (summary order); N.Y. C.P.L.R. § 213(6) (McKinney 2024); *see, e.g.*, *TEG NY LLC v. Ardenwood Estates, Inc.*, No. 03-cv-01721 (DGT), 2004 WL 626802, at *6 (E.D.N.Y. Mar. 30, 2004) (six-year statute of limitations applied to claim for reformation); *Wallace v. 600 Partners Co.*, 658 N.E.2d 715, 717 (N.Y. 1995) (same).  The Second Circuit has adopted "the six-year limitations period prescribed by New York's C.L.P.R. § 213" for claims brought under Section 1132, ERISA's civil enforcement provision, *Miles*, 698 F.2d at 598, including claims for reformation, *see, e.g.*, *Carollo*, 964 F. Supp. at 688-89; *DeVito v. Pension Plan of Loc. 819 I.B.T. Pension Fund*, 975 F. Supp. 258, 264 (S.D.N.Y. 1997), *abrogation in other part recognized*, *Dunnigan v. Metro. Life Ins. Co.*, 99 F. Supp. 2d 307 (S.D.N.Y. 2000).  As a

result, and as the parties both agree, Rappaport's claim for reformation under ERISA has a six-year statute of limitations.

### 2. Analysis

Guardian argues that Rappaport's action is time barred because it was filed more than six years after March 2005, when Guardian issued the policy with an insured earnings definition that excluded bonuses and commissions. The Court disagrees with Guardian on the law and on the facts.

First, the Court disagrees with Guardian's assertion that "an action to reform an insurance policy to correct a mistake in the issued policy . . . accrues when the policy issued." Guardian Br. at 14 (citing to state cases such as *Goldberg v. Manufacturers Life Ins. Co.*, 672 N.Y.S.2d 39 (1998)). "Although state law determines the limitations period, federal law governs the accrual date for a claim under ERISA." *Ivanovic v. IBM Pers. Pension Plan*, 47 F. Supp. 3d 163, 167 (E.D.N.Y. 2014), *aff'd*, 620 F. App'x 62 (2d Cir. 2015) (summary order). "Under federal common law, courts generally apply the 'discovery rule' to determine when an ERISA cause of action accrues, looking to when the plaintiff 'discovers, or with due diligence should have discovered, the injury that is the basis of the litigation.'" *Bilello v. JPMorgan Chase Ret. Plan*, 607 F. Supp. 2d 586, 592 (S.D.N.Y. 2009) (quoting *Guilbert v. Gardner*, 480 F.3d 140, 149 (2d Cir. 2007)); *see also Carey v. Int'l Bhd. of Elec. Workers Loc. 363 Pension Plan*, 201 F.3d 44, 48 (2d Cir. 1999) (claim accrues when plaintiff "discovers, or with reasonable diligence should discover, the injury that gives rise to his claim"). The claim for reformation therefore "accrues, and the six-year limitations period begins to run, when there has been a repudiation by the fiduciary which is *clear* and made known to the beneficiaries." *Miles*, 698 F.2d at 598 (citation and internal quotation marks omitted); *see also Medoy v. Warnaco Emps.' Long Term Disability Ins. Plan*, No. 97-cv-

06612 (SJ), 2005 WL 3775953, at *5 (E.D.N.Y. Dec. 24, 2005) ("[T]he repudiation or denial of benefits must be clear, unequivocal, and continuing." (internal quotation marks omitted)); *accord Mitchell v. Shearson Lehman Bros., Inc.*, No. 97-cv-00526 (MBM), 1997 WL 277381, at *2 (S.D.N.Y. May 27, 1997).

For example, in *DeVito*, a pension fund argued that the statute of limitations period for plaintiff's nonfiduciary Section 502, 29 U.S.C § 1132, reformation claim began to run when the plan at issue was amended.  975 F. Supp. at 264.  The court rejected the pension fund's argument, reasoning that under the Second Circuit's "clear repudiation" standard set forth in *Miles* and *Larsen v. NMU Pension Trust*, 902 F.2d 1069 (2d Cir. 1990), "[t]he earliest date on which Defendants could have rendered a 'clear repudiation' of Plaintiff's claim was . . . when Defendant, through CIGNA, confirmed its calculation of Plaintiff's pension over her objection."  *DeVito*, 975 F. Supp. at 264-65.  In rejecting the argument that the claim accrued at the time the plan was amended, the court declined to adopt a legal standard that would "requir[e] Plan participants and beneficiaries, likely unfamiliar with the intricacies of pension plan formulas and the technical requirements of ERISA, to become watchdogs over potential Plan errors and abuses."  *Id.* at 265.

Accordingly, here, the six-year statute of limitations does not necessarily begin to run when the insurance policy was issued, but instead accrues when there was "clear repudiation" of the benefits that Rappaport either knew or should have known about.  *See Hirt*, 450 F. Supp. 2d at 333 ("A plan amendment or even an informal letter denying benefits, *and knowledge thereof* . . . , can be sufficient as a repudiation[.]" (emphasis added)).  Guardian's repudiation was certainly clear and unequivocal on January 22, 2021, when Guardian informed Rappaport that it had determined he no longer qualified for disability payments.  *See*

11

JSUF ¶ 72; App'x 2854; *Medoy*, 2005 WL 3775953, at *5. Rappaport's September 2022 suit was filed within six years of that denial. *See generally* Compl.

Looking back further, based on the evidence presented on summary judgment, the Court cannot conclude as a matter of law that Rappaport knew or should have known in 2005 about Guardian's repudiation, contained in the policy, regarding the plan's insured earnings definition, such that his reformation claim accrued in 2005. Greenbaum, ICC's insurance broker, selected an earnings definition that expressly *included* bonuses and commissions, and confirmed that selection with Guardian when Guardian requested such confirmation. JSUF ¶¶ 14-15; App'x 5593, 5595. In a sworn affidavit, Rappaport attested that he learned that Guardian was not including bonuses and commissions in its insured earnings definition for the first time in January 2021, when his benefits were denied. Rappaport Aff. ¶ 12.

Guardian's reliance on a March 14, 2005 letter it sent to Rappaport about the initiation of coverage, and on another letter sent on April 13, 2005, enclosing an initial premium statement, does not counsel a different conclusion. Guardian Br. at 14; Df. SUF ¶¶ 17, 18. Neither letter includes the policy itself, and Rappaport has sworn that Guardian never sent him "a copy of the full LTD Policy or any other documents stating the definition of Insured Earnings that Guardian used." Rappaport Aff. ¶ 13; *cf. Hirt*, 450 F. Supp. 2d at 333 (reformation claim accrued when plan was amended because summary plan description was mailed to participants, giving them knowledge of the repudiation). Guardian argues that the premium statements would have permitted Rappaport to discover that clear repudiation had occurred because Guardian calculated premiums based only on Rappaport's monthly salary of $16,667, which excluded bonuses and commissions. *See* Guardian Br. at 14, 16. However, Rappaport disputes that the premium statements referenced insured earnings definitions or provided any transparency into the manner in which the premiums were calculated.

Rappaport Aff. ¶¶ 13, 14.  These documents therefore do not support a finding as a matter of law of a clear repudiation that "[was] known, or should [have] be[en] known" to Rappaport in 2005.  *Hirt*, 450 F. Supp. 2d at 333 (quoting *Carey*, 201 F.3d at 47-48).

Guardian also points to a September 21, 2016 letter to Rappaport informing him that his monthly insured earnings were calculated to be $18,333, which is again less than what Rappaport now claims his earnings should have been.  Guardian Br. at 14; JSUF ¶ 30; App'x 1066.  Guardian argues that this was a "clear signal to Plaintiff that he and Guardian disagreed on how insured earnings should be calculated."  Guardian Br. at 14.  Rappaport disputes that this letter provided the requisite notice given the payment of full LTD benefits to him, among other things.  Rappaport Opp. at 10.  But the Court need not engage with the question of whether this letter informing Rappaport of Guardian's monthly earnings calculation provided Rappaport notice, since Guardian does not contest that Rappaport filed his lawsuit six years later.  *See* Guardian Br. 14 (after the September 2016 letter, "Plaintiff did not seek Policy reformation until he commenced this action six years later").  Even if clear repudiation occurred when the September 21, 2016 letter was ultimately received, Rappaport filed his lawsuit within the six-year statute of limitations by filing it in September 2022.  Thus, the statute of limitations does not bar Rappaport's lawsuit, even if the claim began to accrue in September 2016.

Therefore, Guardian has not presented evidence from which the Court could conclude that it is entitled to judgment as a matter of law on its statute of limitations affirmative defense, and the Court denies its motion for partial summary judgment on that basis.

### B.  Specificity of Pleading

Guardian next contends that Rappaport has not pled the circumstances constituting mistake or fraud underlying his reformation claim with sufficient particularity under Rule

9(b).  Guardian Br. at 18.  Rappaport disagrees and responds that he has his met his pleading

burden, even under the heightened standard of Rule 9(b).  Rappaport Opp. at 6.

### 1. Legal Standard

A claim for reformation must set out "what was really agreed upon between the

parties," the written instrument to be reformed, and "that mistake or fraud exists."

*Scarangella v. Grp. Health Inc.*, No. 05-cv-5298 (RJS), 2009 WL 764454, at *19 (S.D.N.Y.

Mar. 24, 2009) (quoting *Chimart Assocs v. Paul*, 489 N.E.2d 231, 234 (N.Y. 1986)) (claim for

reformation under ERISA); *cf. Citibank, N.A. v. Morgan Stanley & Co. Int'l*, 724 F. Supp. 2d

407, 415 (S.D.N.Y. 2010) (in state-law contract action, "[a] claim for reformation of a written

instrument must set forth (1) an agreement other than that expressed in the instrument; (2) the

written instrument sought to be reformed; and (3) mutual mistake of the parties" (internal

quotation marks omitted)).  A district court may grant reformation "due to the mutual mistake

of both parties, or where one party is mistaken and the other commits fraud or engages in

inequitable conduct."  *Caban v. N.Y.C. Dist. Council of Carpenters Pension Plan*, No. 19-cv-

06205 (JGK), 2020 WL 5774901, at *5 (S.D.N.Y. Sept. 28, 2020) (quoting *Amara v. CIGNA

Corp.*, 775 F.3d 510, 525 (2d Cir. 2014)).  ERISA further "authorizes district courts to grant

equitable relief — including reformation — to remedy violations of subsection I of ERISA,

even in the absence of mistake, fraud, or other conduct traditionally considered to be

inequitable."  *Caban*, 2020 WL 5774901, at *5 (quoting *Laurent v. PricewaterhouseCoopers

LLP*, 945 F.3d 739, 748 (2d Cir. 2019)).

At the pleading stage, allegations of mutual mistake or fraud must satisfy the

particularity requirements of Rule 9(b).  *See Citibank, N.A. v. Morgan Stanley & Co. Int'l*,

724 F. Supp. 2d 407, 416-17 (S.D.N.Y. 2010); *see also Barbagallo v. Marcum LLP*, 820 F.

Supp. 2d 429, 440 (E.D.N.Y. 2011) (same).  "In a claim for contract reformation, plaintiffs

may meet [Rule 9(b)'s] particularity requirement by alleging the nature of the mistake and when it occurred." *Barbagallo*, 820 F. Supp. at 440.

### 2. Analysis

The Court finds that Rappaport has sufficiently pled his claim for reformation.  While there is much more evidence presented for purposes of evaluating the merits of the claim, for pleading purposes under Rule 9(b), the Amended Complaint has identified "the nature of the mistake and when it occurred," *Barbagallo*, 820 F. Supp. 2d at 440, in alleging (1) that ICC checked the box for an insured earnings definition that included bonuses and commissions; (2) that internal Guardian documents reflected this selection; and (3) that Guardian mistakenly issued a policy that did not use that earnings definition. AC ¶¶ 60-63, 66-67, 69.  This sufficiently alleges the nature of the mistake (changing "including" to "excluding") and when it occurred to satisfy the heightened specificity requirements of Rule 9(b).  The Amended Complaint also alleges that the mistake was mutual.  *See id.* ¶¶ 153-154; *see Barbagallo*, 820 F. Supp. 2d at 441 (claim satisfied Rule 9(b) where it described the "nature and location" of the error and stated that the "contract as written d[id] not reflect the intent of the parties").  Finally, Rappaport has identified the instrument to be reformed, the LTD Policy, which Guardian does not contest.  *See id.* ¶ 164.  As a result, the Court finds that the Amended Complaint meets Rule 9(b)'s particularity requirement.

### C.  Failure to Show that Mistake or Fraud Occurred

Finally, Guardian argues that it is entitled to summary judgment on Rappaport's reformation claim because Rappaport has not shown by clear and convincing evidence that the parties agreed to something other than what is reflected in the policy, a prerequisite for reformation.  *See* Guardian Br. at 15-18.  Specifically, Guardian contends that it both proposed and issued the policy with an insured earnings definition that *excluded* bonuses and

commissions, that it calculated premiums under the policy based on Rappaport's covered monthly salary (excluding bonuses and commissions), and that Rappaport never sought reformation or to change the term in the plan until September 2022, when he filed this action. *Id.* The Court concludes that genuine disputes of material fact prevent it from granting Guardian's motion for summary judgment on Count II.

### 1. Legal Standard

As discussed *supra*, a district court may grant reformation for a claim under Section 1132(a)(3) where the court finds (1) mutual mistake, (2) mistake coupled with fraud or inequitable conduct, or (3) violations of subsection I of ERISA. *See Caban*, 2020 WL 5774901, at *5. To prove mistake for purposes of a claim for reformation, "a plaintiff must show by clear and convincing evidence that 'a party entered a contract "in ignorance or mistake of facts material to its operation."'" *Osberg v. Foot Locker, Inc.*, 862 F.3d 198, 213 (2d Cir. 2017) (*Osberg II*) (quoting *Amara*, 775 F.3d at 529). Equitable fraud "generally consists of obtaining an undue advantage by means of some act or omission which is unconscientious or a violation of good faith," *Osberg v. Foot Locker, Inc.*, 138 F. Supp. 3d 517, 557 (2d Cir. 2015) (*Osberg I*) (quoting *Amara*, 775 F.3d at 526), *aff'd*, 862 F.3d 198 (2d Cir. 2017), but "does not require a showing of intent to deceive or defraud," *id.*; *accord Osberg II*, 862 F.3d at 210 n.10. Inequitable conduct "includes deception or even mere awareness of the other party's mistake combined with superior knowledge of the subject of that mistake." *Osberg I*, 138 F. Supp. 3d at 557 (quoting *DS Parent, Inc. v. Teich*, No. 13-cv-01489 (LEK), 2014 WL 546358, at *4 (N.D.N.Y. Feb. 10, 2014)). Courts in this Circuit have found reformation proper based on "one party's unilateral mistake combined with the fact that the court could infer that the other party knew of the mistake, knowledge which alone qualified as the 'inequitable conduct' necessary to reform the contract." *Amara v. CIGNA*

*Corp.*, 925 F. Supp. 2d 242, 253 (D. Conn. 2012), *aff'd*, 775 F.3d 510 (2d Cir. 2014); *see*

*Tokio Marine & Fire Ins. Co. v. Nat'l Union Fire Ins. Co.*, 91 F.2d 964, 966 (2d Cir. 1937)

(same).

### 2. Analysis

Guardian is not entitled to judgment as a matter of law on Count II of the Amended

Complaint because, drawing all inferences in favor of Rappaport, a reasonable factfinder

could find in favor of him on this claim.  ICC's application sought an earnings definition that

included bonuses and commissions.  AC ¶¶ 60-63; JSUF ¶¶ 12-15; App'x 5586-87, 5595.

The record also reflects that Guardian Underwriting Specialist Anna Keiper wrote to

Greenbaum, ICC's insurance broker, to confirm an earnings definition that included bonuses

and commissions, and Greenbaum wrote back to confirm ICC's selection of that definition.

JSUF ¶¶ 12-16; App'x 5593, 5595.  A trier of fact could find that Guardian understood ICC to

be seeking an earnings definition that included bonuses and commissions.  Indeed, Guardian's

new case worksheet reflected that definition, and one schedule of benefits in the

administrative record includes an earnings definition corrected by hand to change "excluding"

to "including" when referencing bonuses and commissions.  AC ¶¶ 66-67; JSUF ¶¶ 16-17;

App'x 5583, 5611.  Yet the final schedule of benefits read "excluding," App'x 5599, as did

the plan itself, *id.* at 5788.  Neither party alleges that Guardian notified ICC or Greenbaum

that Guardian had changed the definition of insured earnings from "including" to "excluding"

bonuses and commissions despite Greenbaum's confirmation that ICC selected the

"including" definition.

Guardian argues that the record does not support mistake or fraud because even if ICC

requested a definition of insured earnings that included bonuses and commissions, Guardian

(1) sent a proposal for coverage to ICC that used "excluding" and (2) issued coverage with an

insured earnings definition "excluding" bonuses and commissions.  Guardian Br. at 15-16; *see* App'x 86 (policy), 6419 (proposal for coverage).  But, as Rappaport notes, another proposal for coverage exists in the record, in which "excluding" is crossed out and "including" is handwritten above.  Rappaport Opp. at 8-9; JSUF ¶ 22.  The parties do not agree on which version was sent to ICC, *see* Rappaport Opp. at 9; Guardian Br. at 15-16; and the documents in the administrative record do not reveal when in the negotiation process they were sent, *see* App'x 5599, 5611; Guri Decl. ¶ 13.  Rappaport denies that he was ever sent a final policy with the insured earnings definition.  Rappaport Aff. ¶¶ 13, 14.  Construing facts in favor of the nonmoving party, there is enough evidence in the record that could permit a fact finder to conclude that at least a mutual mistake occurred when Guardian neglected to update the quote and proposal to reflect the understanding between the parties when it issued the LTD policy to cover insured earnings with a definition that excluded bonuses and commissions.  *See Tokio Marine*, 91 F.2d at 966 (party to contract normally has "a right to rely upon the fact that a formal document prepared by the other will express their original and definitive agreement"; mistake is "implicit . . . in the silent acceptance of the altered agreement" and reformation was thus proper).

Guardian also argues that its calculation of premiums due under the policy, combined with the fact that ICC and Rappaport never objected to those calculations, necessarily indicates that a mistake did not occur.  *See* Guardian Br. 16-18.  Guardian states that it used Rappaport's monthly salary of $200,000, as reported by ICC in 2005, to calculate a monthly salary of $16,666.67 as his insured earnings, as well as later received pay records from ICC in 2015 showing that Plaintiff received "monthly pay (W-2 income) of $18,333.33."  Guri Decl. ¶¶ 21, 23, 25; *see* App'x 5379 (document listing Rappaport's "Covered Annual Payroll" as $200,000); App'x 0711-12 (ICC payroll listing Rappaport's salary as $18,333.33).  Premiums

were calculated based on these amounts, as part of the Total Covered Payroll, and Guardian

argues that neither ICC nor Rappaport ever objected that the amounts should have also

included bonuses and commissions until the litigation was filed.  Guri Decl. ¶¶ 22-23; App'x

5041 (Guardian rate calculation report for ICC).  Rappaport contends that this

mischaracterizes the record of what ICC sent Guardian and that the premium calculation

documents do not indicate that Rappaport's insured earnings were $200,000, or that the

documents calculating the premiums were ever sent to Rappaport or ICC.  See App'x 5598,

5642 (ICC listing Rappaport's annual earnings at $500,000); Rappaport Aff. ¶¶ 13-14

(attesting that policy documents were never sent to Rappaport or ICC and that the documents

he did receive did not state the definition of insured earnings); Pl. RSUF ¶ 20.  Even if some

information was relayed to Rappaport about insured earnings or the premiums charged, given

the record presented on summary judgment, there is an issue of fact as to whether the

information sufficiently indicated to Rappaport that the policy excluded bonuses and

commissions.  See Osberg II, 862 F.3d at 213 (finding evidence of mistake by participants

sufficient even where there was communication to them of some, but not all, of the relevant

benefit calculations).

   Given all of the issues of fact, Guardian is not entitled to judgment as a matter of law

on Count II of the Amended Complaint.

## II. Rappaport's Motion for Partial Summary Judgment

   The Court next considers Rappaport's motion for partial summary judgment.  In Count

I, Rappaport alleges that Guardian had no legal basis for denying his benefits, that Guardian

violated the terms of the policy in its interpretation of insured earnings, and that Guardian

violated ERISA.  Rappaport thus seeks "to recover disability benefits under the LTD Plan that

have not been paid to date, with interest, and those that will become due in the future."  AC

¶ 149; *see also id.* ¶¶ 141-142, 147.  Rappaport does not seek summary judgment on the merits of that claim, but instead seeks summary judgment on the limited issue of the standard of review that should be applied to the benefits denial at trial.  Dkt. 75.

Rappaport also seeks summary judgment on Guardian's two counterclaims.  *See* Am. Ans.; Rappaport Br. at 1.  Guardian's first counterclaim seeks recovery of its alleged overpayments to Rappaport in the amount of "$301,014.12 . . . plus interest."  Am. Ans. Counterclaim 1 ¶¶ 18-19.  The second counterclaim seeks set off of "any future obligation to pay LTD benefits by the amount of the overpayment previously made to" Rappaport in the event that the Court determines Rappaport is owed any additional LTD benefits under the plan.  Am. Ans. Counterclaim 2 ¶ 21.

The Court will address each aspect of Rappaport's summary judgment motion in turn.

### A.    Standard of Review for Denial of Benefits Claim

Rappaport first argues that the Court should apply a *de novo* standard of review to its claim for benefits at trial because Guardian violated ERISA's claims regulation procedures, thereby forfeiting deferential review under an arbitrary and capricious standard.  Rappaport Br. at 6.  Rappaport claims Guardian violated the claims regulation procedures by untimely rendering its decision on his appeal, untimely providing him with relevant documents, and failing to cure its violations during the remand.  *Id.* at 8-13.  Guardian opposed this motion and, after the close of summary judgment briefing, submitted supplemental briefing arguing that the Supreme Court's recent decision in *Loper Bright* further supports the denial of Rappaport's summary judgment motion.  Dkt. 96.  For the following reasons, the Court agrees with Rappaport that a *de novo* standard applies to this Court's review of the merits of Count I.

### 1. Legal Standard

"Congress enacted ERISA 'to promote the interests of employees and their beneficiaries in employee benefit plans, and to protect contractually defined benefits.'" *Halo v. Yale Health Plan*, 819 F.3d 42, 47-48 (2d Cir. 2016) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 113 (1989)).  ERISA permits civil actions brought by, among others, plan participants or beneficiaries "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).  It also requires employee benefit plans to, "in accordance with regulations of the Department of Labor," both "provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant," and "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." *Halo*, 819 F.3d at 48 (alterations adopted) (quoting 29 U.S.C. § 1133).

The Department of Labor has promulgated regulations that set forth "minimum requirements for employee benefit plan procedures pertaining to claims for benefits by participants and beneficiaries" in accordance with Sections 503 and 505 of ERISA, 29 U.S.C. §§ 1133, 1135.  29 C.F.R. § 2560.503-1(a).  Among those requirements and procedures are the obligation to establish and maintain reasonable claims procedures, the requirement that plans notify claimants of adverse benefit determinations within forty-five days after receipt of the claim, procedures for extensions of that forty-five-day period, and requirements for the content of benefit determinations.  *Id.* § 2560.503-1(b), (f)(3), (g).

The regulations further require that claimants be given at least 180 days to appeal adverse benefit determinations and that claimants must exhaust administrative remedies before filing a lawsuit in federal court. *Salisbury v. Prudential Ins. Co. of Am.*, 238 F. Supp. 3d 444, 447-48 (S.D.N.Y. 2017); *see* 29 C.F.R. § 2560.503-1(b), (h)(3)(i). "Once an appeal is filed, the plan administrator has 45 days to render a decision. The plan administrator may request a single 45 day extension, but only if 'the plan administrator determines that special circumstances . . . require an extension of time for processing the claim.'" *Salisbury*, 238 F. Supp. 3d at 448 (quoting 29 C.F.R. § 2560.503-1(i)(1)(i)). "Before taking an extension, the plan administrator must provide written notice to the claimant 'indicating the special circumstances requiring an extension of time and the date by which the plan expects to render the determination on review.'" *Id.* (alteration adopted) (quoting 29 C.F.R. § 2560.503-1(i)(1)(i)).

"ERISA does not itself prescribe the standard of review by district courts for challenges to benefit eligibility determinations . . . ." *Mayer v. Ringler Assocs. Inc.*, 9 F.4th 78, 84 (2d Cir. 2021) (quoting *Novella v. Westchester Cnty.*, 661 F.3d 128, 140 (2d Cir. 2011)); *see also Halo*, 819 F.3d at 51; *Firestone*, 489 U.S. at 108-09 ("Although it is a comprehensive and reticulated statute, ERISA does not set out the appropriate standard of review for actions under § 1132(a)(1)(B) challenging benefit eligibility determinations." (citation omitted) (internal quotation marks omitted)). Instead, as ERISA "abounds with the language and terminology of trust law," courts have been "guided by principles of trust law" in determining the appropriate standard of review for actions under Section 1132(a)(1)(B). *Firestone*, 489 U.S. at 110-11; *see also Halo*, 819 F.3d at 51 (same).

Applying trust law principles, the Supreme Court has held that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the

benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone*, 489 U.S. at 115; *accord Mayer*, 9 F.4th at 84. Benefit eligibility determinations under plans that "invest[] the administrator with broad discretionary authority to determine eligibility are reviewed under the arbitrary and capricious standard." *Mayer*, 9 F.4th at 84 (quoting *Novella*, 661 F.3d at 140). The plan "bears the burden of proof on this issue since the party claiming deferential review should prove the predicate that justifies it." *Halo*, 819 F.3d at 58 (quoting *Sharkey v. Ultramar Energy Ltd.*, 70 F.3d 226, 230 (2d Cir. 1995)).

If the arbitrary and capricious standard applies, the scope of review is "narrow." *S.M. v. Oxford Health Plans (N.Y.), Inc.*, 94 F. Supp. 3d 481, 508 (S.D.N.Y. 2015), *aff'd*, 644 F. App'x 81 (2d Cir. 2016) (summary order). "[D]enials may be overturned . . . only if the decision is without reason, unsupported by substantial evidence or erroneous as a matter of law. 'Substantial evidence' is such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the [administrator and] . . . requires more than a scintilla but less than a preponderance." *Id.* (citation and internal quotation marks omitted); *see also Mayer*, 9 F.4th at 89 (same).

In *Halo*, the Second Circuit held that federal courts may also review a denial of benefits *de novo* if "a plan[] fail[s] to comply with the Department of Labor's claims-procedure regulation" in 29 C.F.R. § 2560.503-1, "unless the plan has otherwise established procedures in full conformity with the regulation and can show that its failure to comply with the claims-procedure regulation in the processing of a particular claim was inadvertent *and* harmless." *Halo*, 819 F.3d at 57-58. Examples of inadvertent and harmless violations include human error that causes "a plan to respond in 73 hours when the regulation requires that it do so in 72, or in 16 days when the regulation specifies 15." *Id.* at 57 (citation omitted).

Among the requirements of 29 C.F.R. § 2560.503-1 are regulations on the processing of a claimant's appeal of the denial of benefits, including when extensions are appropriate. *See* 29 C.F.R. § 2560.503-1(b), (h)(3)(i), (i)(1)(i), (i)(3)(i). Plan administrators have forty-five days to render a decision once an appeal is filed, but can take a single extension "only if" the plan administrator determines that special circumstances require such an extension. *Salisbury*, 238 F. Supp. 3d at 448. "Before taking an extension, the plan administrator must provide written notice to the claimant 'indicat[ing] the special circumstances requiring an extension of time and the date by which the plan expects to render the determination on review.'" *Id.* (quoting 29 C.F.R. § 2560-503.1(i)(1)(i)). Extensions that do not constitute "special circumstances" "constitute a violation of the claims-procedure regulation." *Id.* at 459.

### 2. *Loper Bright*'s Effect on the Standard of Review

As a threshold matter, Guardian argues that after the Supreme Court's recent decision in *Loper Bright*, Rappaport cannot rely on the Second Circuit's decision in *Halo*, 819 F.3d 42, and the Department of Labor "claim regulation to divest Guardian of plan-granted discretionary authority." Df. Supp. Mem. at 1. The Court does not agree.

Last term, the Supreme Court overruled its decision in *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). *See Loper Bright*, 144 S. Ct. at 2273. *Chevron* addressed deference to administrative agencies' interpretations of the statutes they administered. It held that if a reviewing court determined that "Congress ha[d] directly spoken to the precise question at issue" in the statute, the inquiry ended and the court need not defer to the agency's interpretation of the statute. *Chevron*, 467 U.S. at 842-43. But under *Chevron*, if the statute was "silent or ambiguous with respect to the specific issue," then the court could not "substitute its own construction of a statutory provision for a reasonable

interpretation made by the administrator of an agency." *Id.* at 843-44.  In *Loper Bright*, the Supreme Court overruled *Chevron* and held that "[t]he deference that *Chevron* require[d] of courts reviewing agency action cannot be squared with the A[dministrative Procedure Act]," 144 S. Ct. at 2263, in part because that Act requires courts reviewing agency action "to 'decide *all* relevant questions of law' and 'interpret . . . *statutory provisions*,'" *id.* at 2265 (second emphasis added) (quoting 5 U.S.C. § 706).  After *Loper Bright*, courts considering agency interpretations of ambiguous statutes "must exercise their independent judgment in deciding whether an agency has acted within its statutory authority."  *Id.* at 2273.

A separate line of cases from *Chevron* — *Auer v. Robbins*, 519 U.S. 452 (1997) — governs deference to an agency's interpretations of its own regulations that are deemed to be ambiguous.  *See Linares Huarcaya v. Mukasey*, 550 F.3d 224, 228-29 (2d Cir. 2008).  "*Chevron* deference [was] the deference afforded to an agency's interpretation of a *statute* it is charged with administering. . . . *Auer* deference is the deference we afford to an agency's interpretation of *its own regulations*."  *Id.* at 229 (emphases added) (quoting *Edwards v. INS*, 393 F.3d 299, 308 n.11 (2d Cir. 2004)).  Under *Auer*, courts are required to defer to an agency's interpretation of its ambiguous regulations, which is "controlling unless plainly erroneous or inconsistent with the regulation."  *Id.* (quoting *Llanos-Fernandez v. Mukasey*, 535 F.3d 79, 82 (2d Cir. 2008)); *see also Kisor v. Wilkie*, 588 U.S. 558, 568, 573 (2019) (plurality opinion) (same).

The Court rejects Guardian's contention that *Loper Bright* alters the analysis that the Court must undertake in determining the standard of review to apply when considering Rappaport's claim for denial of benefits.  Guardian argues that because the Department of Labor did "not have authority to issue . . . punitive rules" — namely, the claim procedure regulations in 29 C.F.R. § 2560.503-1 that purportedly "dictate or alter judicial review

standards," Df. Supp. Mem. at 5 — Rappaport cannot rely on the regulations and the Second

Circuit's decision in *Halo* to "strip Guardian of its plan-granted discretionary authority." *Id.*

at 1. Guardian argues that "*Loper* now requires courts to address 'the question that matters:

Does the statute authorize the challenged agency action?'" *id.* at 2, and that ERISA did not

authorize the Department of Labor "to dictate or alter judicial review standards," *id.* at 5.

Guardian argues that *Halo* — the Second Circuit decision holding that an arbitrary and

capricious standard of review does not apply when a plan failed to comply with the

Department of Labor's claims-procedure regulation — is an "insufficient foundation" for

Plaintiff's contention that a *de novo* standard of review should apply because *Halo* "fail[ed] to

apply the analysis that *Loper* now mandates." *Id.* at 8-10. The Court does not agree.

First, the regulations do not, contrary to Guardian's assertions, "dictate judicial

standards of review," Df. Supp. Mem. at 6. Instead, the Department of Labor regulations at

issue govern, among other things, time limits for claims processing, exhaustion, and the

manner and content of notification of benefit determination. *See, e.g.*, 29 C.F.R. §§ 2560.503-

1(g)-(h), (l). The regulations themselves do not contain a judicial standard of review. *See id.*;

*Halo*, 819 F.3d at 53 ("Subsection (*l*) of the regulation admittedly says nothing about

standards of review."). Instead, the Second Circuit in *Halo* examined the preamble to the

regulations, trust law, and the regulatory and statutory purpose of ERISA, *Halo*, 819 F.3d at

51, in ultimately concluding that a plan is not entitled to a deferential standard of review if it

does not comply with the regulations unless such noncompliance was inadvertent and

harmless. *Id.* at 58; *see also Cogdell v. Reliance Std. Life Ins. Co.*, --- F. Supp. 3d ---, 2024

WL 4182589, at *4 (E.D. Va. Sept. 11, 2024) (explaining that courts, not the Department of

Labor, "have determined whether the procedural violation of rendering a decision outside of

the 45-day window still entitles a plan administrator to deference under the doctrine of

substantial compliance — a determination that has produced different results in different jurisdictions").

The Supreme Court's decision in *Loper Bright* does not call *Halo* into question such that this Court may disregard that binding precedent. *Stare decisis* requires this Court to follow decisions of the Second Circuit until that court says otherwise. *See United States v. Diaz*, 122 F. Supp. 3d 165, 179 (S.D.N.Y. 2015) (explaining that where "the Second Circuit has spoken directly to the issue presented by this case," "this Court is required to follow that decision unless and until it is overruled in a precedential opinion by the Second Circuit itself or unless a subsequent decision of the Supreme Court so undermines it that it will almost inevitably be overruled by the Supreme Court" (citation and internal quotation marks omitted)), *aff'd*, 854 F.3d 197 (2d Cir. 2017). Guardian has not convinced the Court that *Loper Bright* establishes that "the Second Circuit or the Supreme Court is all but certain to overrule" *Halo*. *Id.* (internal quotation marks omitted). *Loper Bright* overruled *Chevron* deference. *Halo* never referenced *Chevron* deference and instead invoked *Auer* deference in evaluating the DOL's interpretation of DOL regulations and issued its judicial assessment of the appropriate standard of review based on that and several other grounds. *Halo*, 819 F. 3d at 53. *Loper Bright* does not call into question, or address, deference to agency interpretations of their regulations, instead focusing on Congress's command that reviewing courts "interpret . . . statutory provisions." *See Loper Bright*, 144 S. Ct. at 2265 (quoting 5 U.S.C. § 706). Indeed, the Supreme Court independently considered whether to jettison *Auer* deference in a separate challenge and rejected the invitation. *See Kisor*, 139 S. Ct. at 2418. As a result, the Court is not persuaded that either the Second Circuit or Supreme Court are "all but certain to overrule" *Halo*. *Diaz*, 122 F. Supp. 3d at 179 (citation omitted). The Court therefore declines to depart from settled Circuit precedent, and Rappaport may rely on the

DOL's claim procedure regulations and the Second Circuit's direction in *Halo* regarding the level of review to apply if claims-procedure regulations are not followed.[2]

### 3. *De Novo* Standard Shall Apply

Because the parties agree that the plan grants Guardian discretion, *see* Rappaport Br. at 7; Guardian Opp. at 7, the arbitrary and capricious standard of review applies unless Guardian failed to comply with ERISA's claims-procedure regulations and the noncompliance was not "inadvertent and harmless." *Halo*, 819 F.3d at 57-58. Rappaport contends that Guardian did not comply with the regulations because it did not render a timely decision on Rappaport's appeal, did not timely provide Rappaport with certain documents, and did not cure alleged violations during the remand. *See* Rappaport Br. at 8.

The Court begins by considering Rappaport's first argument, in which he contends that Guardian did not comply with the 45-day window to render a decision on an appeal and that special circumstances did not require an extension of time. Rappaport Br. at 8. There is no dispute that Guardian made its decision on the appeal outside of the forty-five-day window: the deadline to issue a decision was May 9, 2022, and Guardian took an additional extension and rendered its decision on June 23, 2022. JSUF ¶¶ 91, 103. As set forth previously, plan administrators may take a single extension "only if" they determine that special circumstances

---

[2] Guardian argues Supreme Court precedent under *Firestone* and its progeny requires the Court to apply a deferential standard as long as the plan grants the administrator discretion. *See* D. Supp. Mem. at 3-5 & n.1. But *Halo* engages directly with the *Firestone* precedent and explains that the trust law principles invoked in *Firestone* also extend to failures to exercise applicable standards of care, which would implicate noncompliance with the DOL regulations. *Halo*, 819 F.3d at 52. Like *Halo*, many courts have held that deferential review does not survive an administrator's procedural violations and the Supreme Court has not granted certiorari to direct otherwise. *See, e.g.*, *Mayer*, 9 F.4th 78, *cert. denied*, 142 S. Ct. 1120 (2022); *Jebian v. Hewlett-Packard Co. Emp. Benefits Org. Income Prot. Plan*, 349 F.3d 1098 (9th Cir. 2003), *cert. denied*, 545 U.S. 1139 (2005); *Geddes v. United Staffing All. Emp. Med. Plan*, 469 F.3d 919 (10th Cir. 2006), *cert. denied*, 554 U.S. 932 (2008).

require such an extension; extensions that are not warranted by "special circumstances" "constitute a violation of the claims-procedure regulation." *Salisbury*, 238 F. Supp. 3d at 448-49 (citing to 29 C.F.R. § 2560-503.1(i)(1)(i)). As such, the parties dispute whether the extension that was taken by Guardian was justified by special circumstances. *See* Rappaport Br. at 8; Guardian Opp. at 8. Guardian argues that the special circumstances were "extraordinary" because Guardian had only two days to review Plaintiff's W-2 forms and other financial information. Guardian Opp. at 8; *see* Df. RSUF ¶¶ 178-183. The Court does not agree that special circumstances justified the extension.

Guardian's extension notice to Rappaport on May 6, 2022, three days before the May 9, 2022 deadline, cited the need for additional financial review and informed Rappaport that if it needed additional information, it would inform him. App'x 5545. Guardian then retained its financial reviewer, Mr. Hoffman, on May 20, 2022, after the May 9, 2022 deadline. App'x 4480. Guardian did not contact Rappaport's counsel to request additional documents until June 14, 2022, eighteen days after the appeal decision deadline and seven days after the CPA firm it had retained informed Guardian that the accountant requested further information. Pl. SRSUF ¶¶ 174-177. On Friday, June 17, Rappaport's counsel informed Guardian that he had requested the tax documents and would get them to Guardian "as soon as we can." App'x 4841, 4850. On Tuesday, June 21 — two business days after Rappaport's counsel informed Guardian he had requested the tax information, and one week after Guardian requested the information — Rappaport's counsel provided Guardian with the requested W-2s. App'x 4865-66.

On this factual record, which contains no dispute as to the extension taken or the reason given, the Court concludes that the special circumstances Guardian cites for its extension of the May 9, 2022 deadline were neither special nor "extraordinary." Guardian's

extension to conduct a financial review is not a special circumstance.  Courts in this Circuit have routinely found that an extension to permit additional, routine review is not a special circumstance warranting extension.  *See Salisbury*, 238 F. Supp. 3d at 449-50 (extension to permit additional review for additional "physical and vocational review" did not constitute a valid special circumstance); *Satter v. Aetna Life Ins. Co.*, No. 16-cv-01342, 2019 WL 2896410, at *6 (D. Conn. Mar. 20, 2019) (extension to permit additional review where insurer had not even appointed a reviewer did not constitute a valid special circumstance); *see also, e.g.*, *Hughes v. Lincoln Nat'l Life Ins. Co.*, 2023 WL 5310611, at *12 (D. Me. Aug. 17, 2023) ("[A]n extension may be imposed only for reasons beyond the control of the plan." (citation omitted)); *Rhodes v. First Reliance Std. Life Ins. Co.*, 670 F. Supp. 3d 119, 125 (S.D.N.Y. 2023) (same).

In *Salisbury*, for example, the plan administrator provided written notice five days before the expiration of the 45-day review period that it was seeking an extension of time, with the sole justification of the extension the need to "allow for review of the information in [plaintiff]'s file which remains under physician and vocational review."  238 F. Supp. 3d at 448.  The *Salisbury* court determined that the plan administrator violated the claims procedure regulation when it requested the extension of time "without 'special circumstances.'"  *Id.* at 449.  The court found no valid special circumstances because "[t]he only rationale for the extension provided in the company's written notice was that [it] needed additional time" for "physician and vocational review," review that is required in "virtually every appeal of the denial of a disability benefits claim."  *Id.* at 449-50.  This, combined with the fact that the written notice identified no "unusual difficulties" associated with the claim, led the court to conclude that if that justification constituted a special circumstance, "virtually any request for

an extension would be permissible, an outcome the Department of Labor has expressly rejected." *Id.* at 450.

In the present case, the "only rationale for the extension provided in the company's written notice was that [it] needed additional time," *id.* at 449, for "financial review . . . in regard to the financial information," App'x 5545.  There is nothing unusual or extraordinary about conducting a financial review for LTD benefits and Guardian did not even retain its financial advisor until after the May 9, 2022 deadline had already passed.  If this justification constitutes a special circumstance, "virtually any request for an extension would be permissible." *Salisbury*, 238 F. Supp. 3d at 450.

In arguing that special circumstances exist, Guardian focuses on Rappaport's provision of financial information toward the end of the extension period, arguing that its extension was "appropriate[]" in light of the fact that Rappaport's counsel produced "over 370 pages of information to Guardian *two days* before the June 23, 2022" deadline.  Guardian Opp. at 8. This does not create a special circumstance or an unusual difficulty that would justify the extension, since the information was not requested by Guardian until *after* the extension was already taken by Guardian, and just a short time before the end of the extension period.  The documents were also promptly provided by Rappaport.

Having found that there were not special circumstances warranting the extension, the Court must next consider whether the "failure to comply with the claims-procedure regulation in the processing of a particular claim was inadvertent *and* harmless." *Halo*, 819 F.3d at 57-58.  It is "[d]efendant['s] burden to show that a violation of the ERISA Procedures Regulation was inadvertent and harmless." *McCutcheon v. Colgate-Palmolive Co.*, No. 16-cv-04170 (LGS), 2020 WL 3893303, at *8 (S.D.N.Y. July 10, 2020); *accord Halo*, 819 F.3d at 57-58 (noncompliant plan "bears the burden of proof on th[e] issue" of inadvertence and

harmlessness). Rappaport argues that the violation was not inadvertent because Guardian "did

not even begin its financial review until after the deadline passed," and that it was not

harmless "because it delayed Rappaport's opportunity for a full and fair review of his claim

for benefits" that he has been without for over three years. Rappaport Br. at 10. Guardian

does not address whether its failure to comply was inadvertent and harmless, which is its

burden. *See McCutcheon,* 2020 WL 3893303, at *8 (rejecting defendant's argument that

plaintiff had not shown prejudice from the noncompliance because "it is Defendants' burden

to show that a violation of the ERISA Procedures Regulation was inadvertent and harmless").

Instead, it continues to press that the extensions were justified by Rappaport's late provision

of documents. Guardian Opp. at 8.

     Even viewing the facts in the light most favorable to Guardian, the Court concludes

the failure to comply with the 45-day review period was not inadvertent. First, *Halo*'s

illustrative examples of inadvertent and harmless violations include human error that causes

"a plan to respond in 73 hours when the regulation requires that it do so in 72, or in 16 days

when the regulation specifies 15." *Halo*, 819 F.3d at 57 (citation omitted). While Guardian

blames the need for the extension on Plaintiff's delay in providing financial documentation,

Guardian Opp. at 8-9, Guardian did not refer the review to Hoffman until May 20, 2022,

eleven days after the May 9, 2022 deadline and twenty-four days after the entry in Guardian's

Claims Management System expressing an intent to refer the case for an accountant's review,

*see* Pl. SRSUF ¶ 173; JSUF ¶ 91, nor did it request the additional documents from Rappaport

until June 14, 2022, *see* JSUF ¶ 98. There is no indication from the record that such delays, as

well as the decision to take the extension in the first place, were a result of human error or

inadvertence. *See Salisbury*, 238 F. Supp. 3d at 451 (asking for extension forty-three days

after receiving administrative appeal not inadvertent where administrator "purposefully sought

the extension and provided . . . inadequate grounds for seeking an extension"); *Aitken v. Aetna Life Ins. Co.*, No. 16-cv-04606 (PGG), 2018 WL 4608217, at *14 (S.D.N.Y. Sept. 25, 2018) (same); *cf. Hafford v. Aetna Life Ins. Co.*, No. 16-cv-04425 (VEC), 2017 WL 4083580, at *7 (S.D.N.Y. Sept. 13, 2017) (noting that "the decision to take an extension is, by definition, not 'inadvertent'"). Even if Guardian's delay was harmless, *Halo* emphasizes that claims violations must be both "inadvertent *and* harmless" in order to apply an arbitrary and capricious standard, 819 F.3d at 58, and the extension was certainly not inadvertent. Given that this extension violated the claim procedure regulations and was not inadvertent and harmless, the Court concludes that *de novo* review should apply to the denial of Rappaport's benefits. *See Schuman v. Aetna Life Ins. Co.*, No. 15-cv-01106, 2019 WL 2991958, at *3, *5 (D. Conn. July 9, 2019) (court applied *de novo* review to claim after remand for additional vocational review because it had found pre-remand violations of the claim procedure regulations). Having concluded that *de novo* review applies, the Court does not address the additional alleged violations of the claim procedure regulations cited by Rappaport. *See Schuman v. Aetna Life Ins. Co.*, No. 15-cv-01006, 2017 WL 1053853, at *15 (D. Conn. Mar. 20, 2017) (after finding some identified violations "more than sufficient to trigger *Halo*," court did not address plaintiff's remaining arguments).

## B. Availability of Equitable Relief for Guardian's Counterclaims

Rappaport next argues that he should be granted summary judgment on Guardian's counterclaims for equitable relief under ERISA because Guardian has not established the requisite elements for an equitable claim by a fiduciary under Section 502(a)(3), 29 U.S.C. § 1132(a)(3). Rappaport Br. at 13. Guardian's first counterclaim seeks the repayment of $301,014.12 from Rappaport for the overpayment of LTD benefits. Am. Ans. Counterclaim 1 ¶¶ 17-19. In its second counterclaim for a set-off, Guardian states "[t]o the extent this Court

determines that Mr. Rappaport is owed any additional LTD benefits under the Plan, then Guardian seeks to exercise its right to set off any future obligation to pay LTD benefits by the amount of the overpayment previously made to Mr. Rappaport." *Id.* Counterclaim 2 ¶ 21.

Rappaport contends that Guardian seeks money damages, not equitable relief, as demonstrated by the fact that it has not "identif[ied] particular funds from which it seeks to recover its alleged damages," "allege[d] that Rappaport was obligated to or did segregate the funds at issue in a separate account," or "allege[d] that Rappaport possesses the specifically identified funds or traceable items that Rappaport purchased with the funds." Rappaport Br. at 15.

### 1. Legal Standard

ERISA permits plan fiduciaries to bring a civil action to obtain "appropriate equitable relief" to enforce "the terms of the plan." 29 U.S.C. § 1132(a)(3); *accord Scarangella*, 2009 WL 764454, at *15. "[A]s the statute makes clear, the relief sought must be equitable, rather than legal, in nature. In order to satisfy this requirement, both the nature of the claim and the 'underlying remedy' must be equitable." *Scarangella*, 2009 WL 764454, at *15 (quoting *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213 (2002)). Whether restitution is a legal or equitable remedy "depends on the basis for the [party's] claim' and the nature of the underlying remedies sought." *Great-West*, 534 U.S. at 213 (original brackets omitted). The Supreme Court has noted that "[a] claim for money due and owing under a contract is quintessentially an action at law." *Id.*; *see also Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 103 (2d Cir. 2005) (same). Traditionally, when the courts of law and equity were separate, the remedy of restitution was available both at law and at equity. The plaintiff had "a right to restitution *at law* through an action derived from the common-law writ of assumpsit" "[i]n cases in which the plaintiff 'could *not* assert title or right to possession of

particular property, but in which nevertheless he might be able to show just grounds for recovering money to pay for some benefit the defendant had received from him.'" *Great-West*, 534 U.S. at 213 (internal quotation marks omitted); *see also* Dan B. Dobbs & Caprice L. Roberts, *Law of Remedies: Damages, Equity, Restitution* § 4.2(1) (3d ed. 2018). A plaintiff could seek restitution at equity, "ordinarily in the form of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could be clearly traced to particular funds or property in the defendant's possession." *Great-West*, 534 U.S. at 213. As a result, the Supreme Court has determined that equitable relief authorized by ERISA does not extend to the "impos[ition of] personal liability on respondents for a contractual obligation to pay money — relief that was not typically available in equity." *Id.* at 210.

Accordingly, a plan fiduciary "may seek equitable restitution where money belonging to the Plan can clearly be traced to particular funds or property in the beneficiary's possession" and where the fiduciary seeks "to restore to the [ERISA plan] particular funds or property in the [beneficiary's] possession." *Scarangella*, 2009 WL 764454, at *15 (citation omitted); *accord* Dobbs & Roberts, *Law of Remedies* § 4.3(2). The plan fiduciary must do more than seek recovery from the general assets of the beneficiary, for when it "seeks merely to recover from the general assets of the defendant," the fiduciary's "claim is that of a general creditor and sounds in law rather than in equity." *Wharton v. Duke Realty, LLP*, 467 F. Supp. 2d 381, 391 (S.D.N.Y. 2006); *see also Nechis*, 421 F.3d at 103 (equitable restitution not available where defendant had no obligation to segregate funds and where plaintiff did not allege funds were segregated in a separate account); *Scarangella*, 2009 WL 764454, at *16 (same). Rather, a fiduciary who seeks "'specifically identifiable funds . . . within the possession and control' of the [beneficiary] . . . properly s[eeks] equitable relief" under

ERISA. *Wharton*, 467 F. Supp. 2d at 391 (quoting *Sereboff v. Mid Atl. Med. Servs., Inc.*, 547 U.S. 356, 362-63 (2006)).

### 2. Analysis of the Counterclaims

Rappaport argues that summary judgment on Guardian's counterclaims is appropriate because Guardian did not (i) identify particular funds from which it seeks to recover its alleged damages, (ii) allege that Rappaport had to or did segregate the funds in a separate account, and (iii) allege that Rappaport possesses the specifically identified funds or traceable items that Rappaport purchased with those funds. Rappaport Br. at 15. Instead, Guardian seeks $301,014.12 in money damages in the first counterclaim, Am. Ans. ¶ 19, or a set-off of any future obligation to pay LTD benefits by the amount of any prior overpayment made to Rappaport in the second counterclaim, Am. Ans. Counterclaim 1 ¶ 19, Counterclaim 2 ¶ 21. The Court agrees that Rappaport is entitled to summary judgment on the former counterclaim but not the latter set off claim.

As a threshold matter, Guardian argues that summary judgment on its counterclaims is premature because there are issues of fact as to whether there was an overpayment of benefits to Rappaport. Guardian Opp. at 11-12. But the fact that overpayment is in dispute does not mean that the Court cannot evaluate whether counterclaims for relief of the nature sought by Guardian are permissible under ERISA if overpayment occurred. *See Vacca v. Trinitas Hosp.*, No. 05-cv-00368 (JFB), 2006 WL 3314637, at *3-4 (resolving, at summary judgment, whether a claim for overpayment was available to fiduciary).

Guardian's first counterclaim for recovery of overpayment seeks a payment from Rappaport of a sum of money commensurate with the overpayment. "Almost invariably," such suits "are suits for 'money damages.'" *Vacca*, 2006 WL 3314637, at *3 (quoting *Frommert v. Conkright*, 433 F.3d 254, 270 (2d Cir. 2006)). The Supreme Court has

emphasized that a money judgment for restitution is a remedy in equity "only if one were to limit restitution to the return of identifiable funds (or property) belonging to the plaintiff and held by the defendant," *Great-West*, 534 U.S. at 216, and thus the Second Circuit has declined to permit money damages under section 502(a)(3) of ERISA where equitable restitution is not involved, *see Nechis*, 421 F.3d at 104 ("We decline this invitation to perceive equitable clothing where the requested relief is nakedly contractual."). Since Guardian has neither identified funds that can "clearly be traced back to particular funds or property in the defendant's possession," *Nechis*, 421 F.3d at 103 (quoting *Great-West*, 534 U.S. at 213), nor identified segregated funds in Rappaport's possession, *see Scarangella*, 2009 WL 764454, at *16, the Court concludes that its "claim is that of a general creditor and sounds in law rather than in equity," *id.* (quoting *Wharton*, 467 F. Supp. 2d at 391); *see also Estate of Close v. Cigna Health & Life Ins. Corp.*, No. 22-cv-07449 (RA), 2023 WL 8846562, at *4 (S.D.N.Y. Dec. 21, 2023) (dismissing plan's claim for overpayment under section 502(a)(3), 29 U.S.C. § 1132(a)(3), where plan sought "specific dollar amounts," but did not "identify any particular fund in [the beneficiary's] possession, distinct from its general assets, from which it [sought] to be reimbursed" (citation omitted)).

The Court rejects Guardian's attempt to salvage its counterclaim by arguing that its request for recovery of overpayment is instead a request for declaratory judgment. The counterclaim is not styled as a claim for declaratory relief and does not seek a declaration of any sort. Am. Ans. Counterclaim 1 ¶¶ 17-19. Instead, the claim is for "recovery of overpayment" in the "amount of $301,014.12" plus interest. *Id.* The Court thus finds no merit in the proposition that Guardian's claim for recovery of $301,014.12 is actually a request for declaratory relief instead of what it appears to be — a claim for money damages

— and "decline[s] this invitation to perceive [declaratory] clothing where the relief is nakedly contractual." *Nechis*, 421 F.3d at 104.

Rappaport's motion focuses primarily on Guardian's first counterclaim. *See* Rappaport Br. at 14-15. He stresses the prerequisites for equitable restitution and does not clearly argue whether set off claims are authorized under ERISA. ERISA authorizes more forms of equitable relief than restitution alone. Indeed, it appears that a claim for equitable set off may be available under ERISA, since set off was traditionally available as a remedy both in law and equity. *See Great-West*, 534 U.S. at 210-211 (evaluating whether certain equitable relief was available under ERISA by evaluating whether that remedy was "typically available in equity"); *United States v. Nat'l City Bank of N.Y.*, 83 F.2d 236, 238 (2d Cir. 1936) (recognizing availability of set off in equity). Courts that have considered the availability of set off under ERISA, albeit in the context of claims against plan beneficiaries who were also fiduciaries, have concluded that ERISA and the Department of Labor's regulations both preserve the availability of "set off . . . to recover debts owed by the participant to the plan as a result of a prior overpayment of benefits." *Coar v. Kazmir*, 990 F.2d 1413, 1421-22 (3d Cir. 1993) (citing 26 C.F.R. § 1.401(a)-13(c)(2)(ii) and (d)(2)); *N.Y. Dist. Council of Carpenters Pension Fund v. Forde*, No. 11-cv-05474 (LAP), 2018 WL 2455437, at *23-24 (S.D.N.Y. June 1, 2018) (same). Given that neither Rappaport nor Guardian have briefed whether a set-off counterclaim is legally cognizable under ERISA, the Court will not grant summary judgment at this time and will instead evaluate the legal basis for the counterclaim at the bench trial, presumably with the benefit of additional authority cited by the parties. Therefore, the Court concludes that summary judgment is properly entered in favor of Rappaport on Guardian's first counterclaim, but denies summary judgment as to Guardian's second counterclaim.

### 3. Leave to Amend

Finally, Guardian requests leave to amend its counterclaims if the Court concludes that they have not been properly pled, since Rappaport relies on *Estate of Close v. Cigna Health & Life Insurance Corp.*, No. 22-cv-07449 (RA), 2023 WL 8846562 (S.D.N.Y. Dec. 21, 2023), a case that was decided after Guardian initially pled its counterclaims in April 2023.  Guardian Opp. at 13 n.7; Dkt. 32.  This is not a sufficient basis for leave to amend.  *Close* follows a long line of cases decided well before Guardian filed its counterclaims that hold that a claim for equitable restitution under ERISA requires the fiduciary to identify traceable assets or property, rather than attempting to recover from the general assets of the opposing party.  *See, e.g.*, *Scarangella*, 2009 WL 764454, at *15-16 (decided in 2009); *Wharton*, 467 F. Supp. 2d at 391 (decided in 2006); *Nechis*, 421 F.3d at 103-04 (decided in 2005).  In addition, Guardian already sought — and received — permission from this Court to amend its answer *after* the summary judgment briefing concluded.  *See* Dkts. 91, 94, 98.  While Rule 15 counsels that the district court should "freely give leave [to amend] when justice so requires," Fed. R. Civ. P. 15(a)(2), Guardian amended its answer in August 2024, well after Rappaport cited to *Close* in his summary judgment motion.  Further, Guardian's footnote requesting leave contains "neither a proposed pleading nor even a hint of the facts [Guardian] could plead to cure the deficiencies" in its counterclaim.  *In re Crude Oil Commodity Litig.*, No. 06-cv-06677 (NRB), 2007 WL 2589482, at *4 (S.D.N.Y. Sept. 8, 2007) (denying leave to amend).  The Court will therefore deny Guardian further leave to amend.

### CONCLUSION

For the reasons stated above, Defendant's motion for partial summary judgment is DENIED and Plaintiff's motion for partial summary judgment is GRANTED in part and DENIED in part.  Defendant is also DENIED leave to amend its counterclaims.  The Clerk of

Court is respectfully directed to close the motions pending at Dkts. 74, 75, and 94. Pursuant to Rules 5A and C of the Court's Individual Rules of Practice in Civil Cases, the parties shall file their joint pretrial order and other pretrial submissions within thirty (30) days of this Opinion and Order. A final pretrial conference and bench trial date will thereafter be scheduled.

Dated: November 22, 2024
      New York, New York

                         SO ORDERED.

                        JENNIFER L. ROCHON
                        United States District Judge